IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MICHAEL WHITNEY,

    Plaintiff,

v.                                                                                                    No. 1:16-cv-00346 SCY

NANCY A. BERRYHILL,[1]
*Acting Commissioner of the*
*Social Security Administration*,

    Defendant.

**MEMORANDUM OPINION AND ORDER**
**GRANTING PLAINTIFF'S MOTION TO REMAND**

**THIS MATTER** is before the Court on Plaintiff Michael Whitney's Motion to Reverse and Remand the Social Security Commissioner's final decision denying Plaintiff period of disability, disability insurance benefits, and supplemental security income. Doc. 19. The Court concludes that the ALJ failed to properly weigh the opinion of Dr. Robert Knight, M.D. Therefore, the Court will **grant** Plaintiff's motion and remand this action to the Commissioner for further proceedings consistent with this opinion.

**I.    BACKGROUND**

Plaintiff applied for period of disability, disability insurance benefits and supplemental security income on February 29, 2012. Administrative Record ("AR") 14; *see also* AR 64, 73. He alleged a disability onset date of September 1, 2011. *Id*. After his claim was denied on initial review and upon reconsideration, his case was set for a hearing in front of an ALJ on August 27, 2014. *Id.*

On October 21, 2014, the ALJ issued a partially favorable written decision finding that

---

[1] Nancy A. Berryhill, who is now the Acting Commissioner of the Social Security Administration, is substituted for Acting Commissioner Carolyn W. Colvin under Rule 25(d) of the Federal Rules of Civil Procedure.

Plaintiff was "not disabled prior to November 4, 2013, but became disabled on that date and has continued to be disabled through the date of this decision." AR 14. In arriving at her decision, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since September 1, 2011, his alleged onset date. AR 16-17. The ALJ then found that Plaintiff suffered from the following severe impairments: (1) mild impingement of the hips; (2) a major depressive disorder; (3) a general anxiety disorder; and (4) minimal degenerative disc disease of the lumbar spine. AR 17. The ALJ determined that Plaintiff's remaining impairments were non-severe. AR 17. With regard to the severe impairments, the ALJ, however, found that these impairments, individually or in combination, did not meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. AR 17-19.

Because she found that Plaintiff's impairments did not meet a Listing, the ALJ then went on to assess Plaintiff's residual functional capacity ("RFC"). AR 19. The ALJ stated that

> After careful consideration of the entire record, I find that since September 1, 2011, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he has to alternate between sitting and standing approximately every thirty minutes, and cannot kneel, crouch, or crawl. In addition, the claimant can make simple work-related decisions, with few workplace changes, and can have only occasional, superficial contact with the general public.

AR 19. The ALJ concluded that Plaintiff had no past relevant work. AR 24. The ALJ then indicated that Plaintiff's age category changed on November 4, 2013 to an individual of advanced age. AR 25. The ALJ found that beginning on November 4, 2013, Plaintiff has "not been able to transfer job skills to other occupations." *Id*. Prior to November 4, 2013, however, the ALJ found that "transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is 'not disabled' whether or not [Plaintiff] has transferable job skills." *Id*. Based on the RFC and the

testimony of a vocational expert, the ALJ then determined at step five that prior to November 4, 2013 (the date Plaintiff's age category changed), considering Plaintiff's age, education, work experience, and his RFC, there are jobs that exist in significant numbers in the national economy that he can perform. AR 25-26. Finally, the ALJ determined that beginning on November 4, 2013, there are no jobs that exist in significant numbers in the national economy that he can perform. AR 26-27.

Plaintiff appealed the ALJ's partially favorable decision to the Social Security Appeals Council and the Appeals Council denied the request for review. AR 10. This appeal followed. Doc. 19.

## II. APPLICABLE LAW

### A. Disability Determination Process

A claimant is considered disabled for purposes of Social Security disability insurance benefits or supplemental security income if that individual is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Social Security Commissioner has adopted a five-step sequential analysis to determine whether a person satisfies these statutory criteria. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps of the analysis are as follows:

(1) Claimant must establish that she is not currently engaged in "substantial gainful activity." If Claimant is so engaged, she is not disabled and the analysis stops.

(2) Claimant must establish that she has "a severe medically determinable physical or mental impairment . . . or combination of impairments" that has lasted for at least one year. If Claimant is not so impaired, she is not disabled and the analysis stops.

(3) If Claimant can establish that her impairment(s) are equivalent to a listed

impairment that has already been determined to preclude substantial gainful activity, Claimant is presumed disabled and the analysis stops.

(4) If, however, Claimant's impairment(s) are not equivalent to a listed impairment, Claimant must establish that the impairment(s) prevent her from doing her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [Claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* § 404.1545(a)(3). Second, the ALJ determines the physical and mental demands of Claimant's past work. Third, the ALJ determines whether, given Claimant's RFC, Claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled and the analysis stops.

(5) At this point, the burden shifts to the Commissioner to show that Claimant is able to "make an adjustment to other work." If the Commissioner is unable to make that showing, Claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005).

**B. Standard of Review**

A court must affirm the denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 800-01 (10th Cir. 1991). In making these determinations, the reviewing court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). For example, a court's disagreement with a decision is immaterial to the substantial evidence analysis. A decision is supported by substantial evidence as long as it is supported by "relevant evidence . . . a reasonable mind might accept as adequate to support [the] conclusion." *Casias*, 933 F.3d at 800. While this requires more than a mere scintilla of evidence, *Casias*, 933 F.3d at 800, "[t]he possibility of drawing two inconsistent

conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

Similarly, even if a court agrees with a decision to deny benefits, if the ALJ's reasons for the decision are improper or are not articulated with sufficient particularity to allow for judicial review, the court cannot affirm the decision as legally correct. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). As a baseline, the ALJ must support his or her findings with specific weighing of the evidence and "the record must demonstrate that the ALJ considered all of the evidence." *Id.* at 1009-10. This does not mean that an ALJ must discuss every piece of evidence in the record. But, it does require that the ALJ identify the evidence supporting the decision and discuss any probative and contradictory evidence that the ALJ is rejecting. *Id.* at 1010.

### III. ANALYSIS

Plaintiff argues that: (1) the ALJ committed reversible legal error by failing to properly evaluate the medical opinions of two of Plaintiff's physicians, Dr. Jeremy Beck, M.D., and Dr. Robert Knight, M.D; (2) the ALJ failed to resolve a conflict between the DOT and vocational expert testimony; and (3) the ALJ's finding at Step 5 is not supported by substantial evidence. Doc. 19 at 1. Because the Court finds that the ALJ committed legal error in her consideration of Dr. Knight's opinion, the Court will reverse and remand for further proceedings consistent with this Opinion. The Court will not address Plaintiff's remaining claims of error because they may be affected by the ALJ's treatment of this case on remand. *Wilson v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## A. The ALJ's Consideration of Dr. Knight's Opinion

Plaintiff first saw Dr. Knight on May 21, 2014, approximately three months prior to the August 27, 2014 hearing in front of the ALJ. AR 660. During this first visit, Plaintiff sought treatment for "bad insomnia, anxiety, and depression." *Id*. Dr. Knight observed that Plaintiff was "anxious, depressed, tremulous." *Id*. He diagnosed Plaintiff with anxiety and depressive disorder and also prescribed Remeron, Abilify, and Xanax. AR 660-61. Plaintiff had follow-up appointments with Dr. Knight on June 4, 2014 (AR 658) and on July 2, 2014 (AR 656). At the June appointment, Dr. Knight observed that Plaintiff was "jittery" and added a diagnosis of insomnia. AR 659. At the July follow-up appointment, Dr. Knight once again assessed Plaintiff with depression and anxiety, and modified some of his medications. AR 657.

Based on this treatment and a review of Plaintiff's medical history from a year prior to his May 2014 initial visit, Dr. Knight completed a "Medical Assessment of Ability to do Work-Related Activities (Mental)" form on August 4, 2014. AR 665-669. Therein, Dr. Knight assessed that Plaintiff had a number of marked limitations in his mental/emotional capabilities:

(1) understand and remember detailed instructions;
(2) carry out very short and simple instructions;
(3) carry out detailed instructions;
(4) maintain attention and concentration for extended periods of time;
(5) sustain an ordinary routine without special supervision;
(6) work in coordination with/or proximity to others without being distracted by them;
(7) complete a normal workday and workweek without interruptions;
(8) accept instructions and respond appropriately to criticism from supervisors;
(9) get along with coworkers or peers; and
(10) respond appropriately to changes in the work place.

AR 665-66. Dr. Knight also assessed Plaintiff as being moderately limited in his ability to:

(1) remember locations and work-like procedures;
(2) understand and remember very short and simple instructions;
(3) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance;
(4) make simple work-related decisions;

(5) interact appropriately with the general public;
(6) ask simple questions or request assistance;
(7) maintain socially appropriate behavior;
(8) be aware of normal hazards and take adequate precautions; and
(9) set realistic goals or make plans independently of others.

AR 665-66.

In addition, Dr. Knight completed an "Assessment of Adaptation to Temperament Characteristics Required by Jobs" form. AR 667. Therein, he indicated that Plaintiff should avoid performing repetitive work, performing a variety of duties, dealing with people, working under stress, directing others, attaining precise standards, and working under specific instructions. *Id*. He also completed Listing forms for "12.04 Affective Disorders" (AR 668) and "12.06 Anxiety-Related Disorders" (AR 669). On these forms, Dr. Knight stated that Plaintiff had marked restrictions in maintaining activities of daily living, marked difficulties in maintaining social functioning, concentration, persistence, or pace, and repeated episodes of decompensation, each of extended duration. AR 668-69.

In her decision, the ALJ assigned "little weight" to Dr. Knight's opinion for two reasons. AR 23. First, she found that the opinion was inconsistent with Plaintiff's "stated social activities including regular shopping trips and regular church attendance" *Id*. She stated that these activities "demonstrate that [Plaintiff] would not have marked restrictions in interacting with others." *Id*. Second, the ALJ stated "there is no evidence in the record to support [Plaintiff's] marked limitations with concentration and understanding instructions, as he exhibited no memory or concentration problems during examinations." *Id*.

**B. Relevant Law**

"An ALJ must evaluate every medical opinion in the record" but the weight accorded to such "opinion[s] will vary according to the relationship between the disability claimant and the

7

medical professional." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir.2004); *See* 20 C.F.R. §§ 404.1527(b)-(c), 416.927(c). Social Security regulations require that, in determining disability, the opinions of treating physicians be given controlling weight when those opinions are well-supported by the medical evidence and are consistent with the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). This is known as the "treating physician rule." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). The idea is that a treating physician provides a "unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations," and therefore, a treating physician's opinion merits controlling weight. *See Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003).

In analyzing whether a treating physician's opinion is entitled to controlling weight, the ALJ must perform a two-step process. "The initial determination the ALJ must make with respect to a treating physician's medical opinion is whether it is conclusive, i.e., is to be accorded 'controlling weight,' on the matter to which it relates." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011) (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir.2003)). In making this initial determination, the ALJ must consider whether the opinion "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record." *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)); *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). If the opinion meets both criteria, the ALJ must give the treating physician's opinion controlling weight. *Id*. To give anything less than controlling weight, the ALJ must demonstrate with substantial evidence that the opinion (1) is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques," or (2) is "inconsistent with other substantial

8

evidence" in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "Under the regulations, the agency rulings, and our case law, an ALJ must 'give good reasons in [the] notice of determination or decision' for the weight assigned to a treating [source's] opinion." *Watkins*, 350 F.3d at 1300.

If the ALJ does not assign a treating source's opinion controlling weight, step two of the analysis requires the ALJ to apply the six factors listed in the regulations to determine whether a treating source's opinion should be rejected altogether or assigned some lesser weight:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003); *see* 20 C.F.R. §§ 404.1527(c), 416.927(c). However, not every factor is applicable in every case, nor should all six factors be seen as absolutely necessary. What is absolutely necessary, though, is that the ALJ give good reasons—reasons that are "sufficiently specific to [be] clear to any subsequent reviewers"—for the weight she ultimately assigns to the opinions. *Langley*, 373 F.3d at 1119. Even if an ALJ determines that a treating source opinion is not entitled to controlling weight, the opinion still is entitled to deference. SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996); *see also Watkins* 350 F.3d at 1300.

### C. The ALJ erred in her consideration of Dr. Knight's Opinion

As an initial matter, while Plaintiff maintains that Dr. Knight is a treating physician whose opinion is entitled to the special weight afforded to treating source opinions, the Court is unable to ascertain from the ALJ's decision whether she in fact considered Dr. Knight to be a

9

treating physician. While the ALJ did not expressly designate Dr. Knight as a treating physician, she also did not suggest that Dr. Knight was not one. Relatedly, because the ALJ did not explicitly conduct a treating physician analysis, it is simply unclear from the ALJ's decision that she applied the treating physician rule at all to Dr. Knight's opinion. The Court will, however, accept Plaintiff's designation of Dr. Knight as a treating source because Defendant did not dispute this designation in her response brief.

The ALJ arguably met the first step of the treating physician analysis. Although the ALJ did not expressly state that she was not giving Dr. Knight's opinion "controlling weight", she assigned it "little weight" after finding that it was not supported by Plaintiff's hearing testimony or by Dr. Knight's examinations. Thus, it is apparent that she did not assign the opinion controlling weight. Nonetheless, while the ALJ may have provided adequate reasons (if supported by substantial evidence) to explain why she was not giving Dr. Knight's opinion controlling weight, that does not end the treating physician analysis. In addition, the ALJ must discuss how much weight to afford the opinion based on the step-two factors.

Here, although the ALJ assigned little weight to Dr. Knight's opinion, there is no indication that she considered any of the factors listed in the regulations. The Court simply does not know whether the ALJ considered the examining and treating relationship between Plaintiff and Dr. Knight, the length of the relationship, the supportability of Dr. Knight's opinions, or Dr. Knight's specialty, among other factors, in deciding to give limited weight to Dr. Knight's opinion. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). Although an ALJ need not explicitly address each of the above six factors, an ALJ must provide reasons that are sufficiently specific for subsequent reviewers to understand why she assigned a particular weight to a particular opinion.

The Court agrees that evidence of Plaintiff's activities of daily living tends to undermine

Dr. Knight's opinion. However, given the extent of the limitations Dr. Knight assessed and his status as a treating physician, the ALJ's brief references to Plaintiff's activities of daily living are insufficient to support her assignment of little weight to Dr. Knight's opinion. And, her conclusory statement that Dr. Knight's examinations fail to support his conclusions, absent further explanation, fails to significantly further undermine Dr. Knight's opinion. This is particularly true given that the limitations assessed by Dr. Knight concerned mental capacity issues for which objective medical evidence is less likely to be available.

The Court recognizes that other reasons exist to discredit Dr. Knight's opinion with regard to the period of disability at issue. For instance, although Plaintiff characterizes him as a treating physician, Dr. Knight did not have an extensive history treating Plaintiff. And, to the extent he did treat Plaintiff, this treatment occurred long after the period of disability at issue and so bears less heavily on the period at issue. In addition, Plaintiff's work as a pedal taxi driver, which involves regular interaction with the general public, tends to undermine the marked and moderate limitations assessed by Dr. Knight. Unfortunately, the ALJ did not discuss Plaintiff's work as a pedal taxi driver in connection with her review of Dr. Knight's opinion. Instead, she referenced this work when discussing Plaintiff's credibility and the moderate limitations assessed by Dr. Bricker. AR 21-22. Doing so, however, did not satisfy the ALJ's requirement to address the numerous marked limitations that Plaintiff's treating physician, Dr. Knight, found. Ultimately, the ALJ did not provide the foregoing reasons or analysis, and this Court is not permitted to engage in a post hoc analysis. *See Haga v. Astrue*, 482 F.3d 1205, 1207 (10th Cir. 2007) (stating that the court "may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself").

In sum, the lack of a developed analysis regarding Dr. Knight's opinion prevents the

Court from engaging in a meaningful judicial review of the ALJ's determination that Dr. Knight's opinion was entitled to little weight. Remand is therefore appropriate. *See Watkins*, 350 F.3d at 1300 (stating that a court must remand when it "cannot meaningfully review the ALJ's determination absent findings explaining the weight assigned to the treating physician's opinion.").

## IV. CONCLUSION

Based on the foregoing, the Court **GRANTS** Plaintiff's Motion (Doc. 19). The Court reverses the Commissioner's decision denying Plaintiff benefits and remands this action to the Commissioner to conduct further proceedings consistent with this Opinion.

_____
UNITED STATES MAGISTRATE JUDGE
**Sitting by Consent**